UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOL A.,[1]<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | Case No. 5:25-cv-01959-MAR<br><br>MEMORANDUM AND ORDER |

Plaintiff Nicol A. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her applications for Title II Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I.

## PROCEDURAL HISTORY

Plaintiff was found to be not disabled in a final decision by an Administrative Law Judge ("ALJ") dated August 7, 2024. Administrative Record ("AR") at 34. In December 2022, Plaintiff filed an application for DIB and SSI, alleging a disability onset beginning July 30, 2017. AR 209–35. Plaintiff's claim was denied at the initial and reconsideration levels, and on January 30, 2024, Plaintiff requested a hearing before an ALJ. AR 68–152. A hearing was held on July 25, 2024. AR 40–67. At the hearing Plaintiff amended her onset date to July 21, 2019. AR 40–67. In a decision on August 7, 2024, the ALJ denied Plaintiff's claims. AR at 17–34.

Plaintiff filed a Request for Review of the ALJ's decision with the Appeals Council. AR at 7–11. Subsequently, the Appeals Counsel denied the request and affirmed the ALJ's decision. AR at 1–6.

Thereafter, on July 30, 2025, Plaintiff filed the instant case. ECF Docket No. ("Dkt.") 1. This matter is before the Court after both parties consented to proceed before a Magistrate Judge, in accordance with 28 U.S.C. § 636(c). Dkts. 6, 8.

## II.

## PLAINTIFF'S BACKGROUND

Plaintiff was forty-two years old on the alleged onset date and forty-nine years at the time of the hearing.[2] AR at 32. Plaintiff has a high school education. AR 344. She has work history as a mental health assistant and a nursing assistant. AR 345. She alleges disability based on (1) blind or low vision; (2) arthritis; (3) sciatica; (4) bulging disc; (5) knee replacement (left); (6) carpal tunnel syndrome; (7) asthma; (8) sleep apnea; (9) depression; and (10) anxiety. AR 343.

## III.

---

[2] Accordingly, Plaintiff was considered a "younger person" on her alleged onset date and at the hearing. AR at 81; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age [fifty]"); 20 C.F.R. § 416.963(c).

## STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[3]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

[3] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 404.1520(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Ford, 950 F.3d at 1148; Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, accounting for the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.

## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since July 21, 2019, the amended alleged onset date[]." AR 19.

### B. STEP TWO

At step two, the ALJ found Plaintiff has the following severe impairments; (1) "obesity"; (2) "internal derangement of the right knee"; (3) "status post left knee replacement"; (4) "lumbar spondylosis"; (5) "osteoarthritis of the right shoulder"; (6) "major depressive disorder (MDD)"; and (7) "adjustment disorder with mixed anxiety and depressed mood." AR 20.

### C. STEP THREE

At step three, the ALJ concluded Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." AR 21.

////

**D. RFC DETERMINATION**

The ALJ found that Plaintiff had the RFC "to perform light work[[4]]," with the following limitations:

> [C]an occasionally climb ramps, and stairs, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, or scaffolds, work at unprotected heights, or work around dangerous moving machinery; she can frequently reach with the right upper extremity; and she can understand, remember and carry out simple instructions.

AR 24-25.

**E. STEP FOUR**

At step four, the ALJ noted that transferability of "job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968)". AR 31.

**F. STEP FIVE**

At step five, the ALJ found that, "considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." AR 32. With the assistance of a vocational expert's's testimony, the ALJ found that Plaintiff would be able to perform occupations such as marking clerk (DOT 209.587-034), cashier II (DOT 2.11.462-010), and cleaner (DOT 323.687-014). AR 33. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act [("SSA")], from July 21, 2019, through the date of this decision." AR 33-34.

////

////

---

[4] "Light work" is defined as:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a)

## V.

## PLAINTIFF'S CLAIMS

Plaintiff presents five disputed issues: (1) whether the ALJ failed to properly consider Plaintiff's subjective statements; (2) whether the ALJ erred by failing to properly evaluate the medical opinion of Dr. Furman; (3) whether the ALJ erred by failing to properly evaluate the medical opinion of Dr. Gumbs; (4) whether the ALJ erred by failing to properly evaluate the medical opinion of Dr. McDaniel; and (5) whether the ALJ erroneously omitted mental work restrictions assessed by Dr. Fahnbulleh from Plaintiff's RFC.[5] Dkt. No. 14 at 6–7.

## VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by

[5] The Court finds the medical opinion issues dispositive of this matter, and thus declines to address the remaining issues. See Hiller v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

isolating a 'specific quantum of supporting evidence'." (quoting Robbins, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.

## DISCUSSION

### A. THE ALJ DID NOT PROVIDE LEGALLY SUFFICIENT REASONS FOR FINDING THE MEDICAL EXPERT'S OPINION UNPERSUASIVE

Plaintiff contends that the ALJ did not provide legally sufficient reasons for finding the opinions of Dr. Furman, Dr. Gumbs, and Dr. McDaniel unpersuasive. Dkt. No. 14 at 7-20.

#### 1. Dr. Furman's opinion

On October 14, 2020 Dr. Furman completed a primary treating physician's initial evaluation report. AR 5511-17. Dr. Furman examined Plaintiff and found she was alert and oriented, deep bending reflexes were normal and equal bilaterally, and her sensation was grossly intact. AR 5513-14. When testing Plaintiff's range of motion, Dr. Furman noted that cervical compression and shoulder depression caused pain. AR 5514. Dr. Furman noted there was tenderness in both shoulders in the

acromioclavicular joint, anterior shoulder, lateral shoulder, and posterior shoulder. AR 5514. Dr. Furman noted Plaintiff had crepitus of the right knee, antalgic gait, and tenderness to palpation of the lateral knee and medial knee. As for Plaintiff's left knee, which had been replaced in 2019, Dr. Furman noted tenderness to palpation of the anterior knee, lateral knee, medial knee and posterior knee. AR 5515.

Dr. Furman concluded that Plaintiff could "return to modified work on 10/14/2020 with the following restrictions: [Plaintiff] may return to semi-sedentary work with no heavy lifting greater than 15 pounds, no ascending or descending stairs, squatting, kneeling, prolonged standing or walking." AR 5516.

**2. Dr. Gumbs's opinion**

On June 23, 2020, Dr. Gumbs completed a "Panel Qualified Medical Evaluation." AR 5303. Dr. Gumbs examined Plaintiff and found she had an erect posture and normal gait. AR 5313. He noted there was tenderness in Plaintiff's left trapezius, scalene, and rhomboid muscles with "1+ spasm and guarding noted." AR 5313. Dr. Gumbs found Plaintiff's compression, traction, Spurling sign and Adson tests were negative. AR 5313. He found there were no sensory deficits in her upper extremities. AR 5313. Dr. Gumbs found Plaintiff was positive for Retropatellar crepitus in both knees, and negative for McMurray test, Apley grind test, Lachman test, lateral pivot shift test, patellofemoral compression test, apprehension sign, anterior cruciate drawer sign, and posterior cruciate drawer sign. AR 5315.

Dr. Gumbs concluded Plaintiff would be in constant moderate pain when working at and above shoulder level, and when carrying more than fifteen to twenty pounds. AR 5317. Plaintiff's left knee would be in constant moderate-to-severe pain with repetitive and prolonged standing, walking, squatting, kneeling, and climbing and descending stairs. AR 5317. Her right knee would be in constant slight-to-moderate pain with prolonged standing, squatting, kneeling, and when ascending and descending stairs. AR 5317.

////

////

**3. Dr. McDaniel's opinion**

On June 2, 2021, Dr. McDaniel remotely evaluated Plaintiff and completed a psychiatric assessment. AR 5391. Dr. McDaniel had Plaintiff complete the Beck Anxiety Inventoryand found her to have moderate anxiety. AR 5427-28. Plaintiff then completed the Beck Depression Inventory, which indicatedsevere depression. AR 5428. Plaintiff also completed the Minnesota Multiphasic Personality Inventory ("MMPI"). AR 5428. The MMPI found Plaintiff was likely over-reporting her symptoms. AR 5429. Plaintiff then took the Hamilton Psychiatric Rating Scale for Depression. AR 5433. It found she had moderate depression. AR 5434. The Hamilton Psychiatric Rating Scale for Anxiety found Plaintiff had moderate anxiety. AR 5434. Ultimately, Dr. McDaniel opined Plaintiff would need three fifteen-minute breaks daily due to her anxiety. AR 5439.

**4. ALJ Opinion**

The ALJ considered the foregoing medical opinions and discounted each as unpersuasive. When discussing Dr. Gumbs's and Dr. Furman's opinions, the ALJ found "unpersuasive" the limitation of, "no heavy lifting over fifteen pounds, no ascending or descending stairs, squatting, kneeling, or prolonged standing or walking.(AR 30). Specifically, the ALJ asserted:

> This limitation is just not consistent with the record as a whole, which showed that she reported a history of pain right shoulders[sic], lower back, bilateral hips and bilateral knees pain which radiates into the bilateral hip region and right leg; she underwent a left total knee arthropathy, had repeated inconsistencies with her pain agreement and was no longer prescribed opiate medications; she repeatedly had a normal gait and station, tenderness to palpation in the lateral patella and calf of the right lower extremity with no tenderness in the tibial plateau, no swelling or ecchymosis, positive apprehension test, 5/5 motor strength and intact sensation from L1-S2, normal range of motion and no edema but had a L5-S1 interlaminar lumbar epidural injection with more than fifty percent improvement for weeks. She did not use a cane, brace, walker, or wheelchair, had tenderness to palpation over the lumbar spine and

> lumbosacral spine, at midline, with bilateral hamstring tightness but there was no muscle spasm and negative Babinski Lasegue, and Faber with normal EMG/NCS findings in the lumbar spine; and there was suspected biceps tenodesis, moderate supraspinatus tendinosis, and mild degenerative AC osteoarthropathy in the right shoulder, total knee arthroplasty of the left knee, moderate osteoarthritis of the right knee, mild to moderate diffuse disc bulge, narrowing of bilateral lateral recess and bilateral neuroforamina with edema in the soft tissue posterior to the spinous processes at L5-S1 on imaging.

AR 30.

The ALJ then found Dr. McDaniel's opinion unpersuasive "because of its lack of supportability and inconsistency with the evidence of record." AR 31. He noted the need for the three fifteen-minute breaks was not supported by the record as there was "no evidence of any mental health hospitalizations, no crisis calls, and no suicidal ideation needing urgent or emergency care. The record also shows that the mental status evaluations by her medical providers were within normal limits." AR 30.

**5. Applicable Law**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide the ALJ will no longer "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844-10, at 5867-68; see also 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include: supportability, consistency, relationship with claimant (including length of treatment, frequency of examinations, purpose of the treatment, extent of the treatment relationship, and examining relationship),

specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Agency's] disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore, the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the factors in paragraphs (c)(3) through (c)(5)," i.e. "[r]elationship with the claimant," "[s]pecialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors" were considered. 20 C.F.R. §§404.1520c(b)(3), 416.920c(b)(3).

Finally, in fashioning a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributable to the medical condition."

Robbins, 466 F.3d at 883 (citation omitted). An ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record, see Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted), or discuss every word of a doctor's opinion or include limitations not assessed by the doctor, see Fox v. Berryhill, No. CV 16-4738-JPR, 2017 U.S. Dist. LEXIS 118129, 2017 WL 3197215 at 5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. However, an ALJ must discuss significant and probative evidence that is contrary to the ALJ's findings and explain why it has been rejected. See Robbins, 466 F.3d at 883; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ must discuss significant and probative evidence and explain why it was rejected).

**6. Analysis**

Under the applicable regulations, the ALJ does not "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must weigh several factors, particularly "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence" and "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" Woods v. Kijikazi, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(2) (internal quotation marks and alteration omitted)). When rejecting a medical source's opinion, the ALJ must provide "an explanation supported by substantial evidence." Id. at 792.

Here, the ALJ did not adequately discuss the supportability and consistency factors in evaluating the medical opinions. As an initial matter, the ALJ erred in evaluating the doctors' opinions together. AR 30-31. The regulations require an ALJ to analyze medical opinions on a source-by-source basis. 20 C.F.R. § 404.1520c(b)(1). This means that the ALJ must offer a separate explanation for each medical source who has provided an opinion. Here, instead, the ALJ grouped Dr. Gumbs's and Dr. Furman's opinions together before rejecting the conclusion that Plaintiff could not

perform "heavy lifting over fifteen pounds," among other limitations, "because of [the opinions'] lack of supportability and inconsistency with the evidence of record." AR 30. The ALJ then went on to summarize "the record as a whole," listing a series of Plaintiffs' test results, complaints, and medical procedures. Id. Nowhere, however, did the ALJ cite to any specific findings by Dr. Gumbs or Dr. Furman or actually explain how those particular findings were inconsistent with other evidence before concluding that the other evidence "does not suggest the claimant cannot lift twenty pounds occasionally." AR 30 (emphasis added). Further, the ALJ made no mention of the fact that Dr. Furman's and Dr. Gumbs's separate opinions were consistent with one another.

By the same token, having elided any discussion of specific findings underpinning Dr. Gumbs's or Dr. Furman's conclusions, the ALJ did not adequately explain why or how those findings failed to support the resulting conclusions. The same is true of the ALJ's rejection of Dr. McDaniel's opinion. Once again, the ALJ rejected this opinion "because of its lack of supportability and inconsistency with the evidence of record." AR 31. Although the ALJ did point to some specific other evidence in the record, such as the lack of suicidal ideation, as inconsistent with Dr. McDaniel's opinion, the ALJ once again did not point to any specific inconsistent finding by Dr. McDaniel or, accordingly, explain how any such finding failed to support Dr. McDaniel's conclusion that Plaintiff required occasional breaks due to anxiety. AR 31.

In short, as the ALJ did not properly articulate how he considered the supportability and consistency factors, he failed to provide legally sufficient reasons for finding Dr. Furman's, Dr. Gumbs's, and Dr. McDaniel's opinions unpersuasive.[6]

---

6 A decision of the ALJ will not be reversed for errors that are harmless. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch, 400 F.3d at 679). Given the significant differences between the doctors' opinions and the ALJ's RFC finding, this Court cannot "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." Id. at 1056.

## VIII.

## RELIEF

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed'." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that [c]laimant is entitled to benefits.").

### B. ANALYSIS

Here, remand for further proceedings is warranted. The ALJ's inadequately-explained rejection of multiple medical opinions was central to the fashioning of the RFC. Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003).

///

///

///

///

///

///

///

///

**IX.**

**CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: August 13, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge